1

2              UNITED STATES DISTRICT COURT

3         FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                    OAKLAND DIVISION

5

6  WILLIAM J. WHITSITT,                    Case No:  C  13-00396 SBA

7          Plaintiff,                      **ORDER GRANTING
                                           DEFENDANTS' MOTIONS TO**
8       vs.                                **DISMISS**

9  INDUSTRIAL EMPLOYER DISTRIBUTOR         Dkt. 45, 50, 66
   ASSOCIATION,
10
   DISTRIBUTOR ASSOCIATION
11 WAREHOUSEMAN'S TRUST,

12 INTERNATIONAL LONGSHOREMAN
   AND WAREHOUSE UNION,
13
   99 UNNAMED DEFENDANTS,
14
          Defendants.
15

16      Pro se Plaintiff William Whittsitt brings the instant action under the Employee

17 Retirement Income Security Act ("ERISA"), 28 U.S.C. § 1332(a), claiming that he was

18 wrongfully denied pension benefits by the Distributor Association Warehouseman's Trust

19 ("the Plan"), which had determined he was not eligible for benefits at this time.  As

20 Defendants, he has named Industrial Employer Distributor Association ("IEDA") and the

21 International Longshoreman and Warehouse Union Local No. 6 ("Union"), which created

22 the Plan, and the Plan itself.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

23      The parties are presently before the Court on: (1) IEDA and Plan's Motion to

24 Dismiss for Failure to Comply with Fed. R. Civ. P. 8(a), and, in the Alternative, Motion for

25 a More Definite Statement under Fed. R. Civ. P. 12(e); and (2) the Union's Motion to State

26 a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6).  Having

27 read and considered the papers filed in connection with this matter and being fully

28 informed, the Court hereby GRANTS both motions to dismiss and DENIES IDEA/Plan's

1  alternative motion for a more definite statement as MOOT.  The Court, in its discretion,

2  finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b);

3  N.D. Cal. Civ. L.R. 7-1(b).

4  **I.    BACKGROUND[1]**

5       **A.    FACTUAL SUMMARY**

6       Plaintiff is a participant in the Plan, which is an ERISA plan created under an

7  agreement between the Union and IEDA.  McKenzie Decl. ¶ 2.  In or about September

8  2010, Plaintiff received a notice from the IEDA stating that the Plan was in "critical status"

9  due to funding issues, and therefore, it was implementing a Rehabilitation Plan as required

10  by federal law.  TAC at 4.  Among other things, the Rehabilitation Plan eliminated certain

11  adjustable benefits, including early retirement benefits.  Id.

12       On October 18, 2013, Plaintiff submitted a letter to IEDA complaining that (1) his

13  benefits were improperly calculated and (2) he did not receive timely notice regarding a

14  reduction in his benefits under the Plan's Rehabilitation Plan.  McKenzie Decl. Ex. A at 1.

15  With regard to his first claim, Plaintiff alleged that his pension benefits began to accrue

16  beginning "day 1 of when [he] started at Electro Coatings Inc. [in 1973]."  Id.; see also

17  TAC at 6.  In his second claim, Plaintiff asserted that that he was entitled to 180 days

18  advance notice of any change to his benefits.  McKenzie Decl. Ex. 1 at 1-2; TAC at 7, 10,

19  11.

20       On October 20, 2013, IEDA, through counsel, responded to Plaintiff's letter, which

21  it construed as a claim for benefits.  Id. Ex. B (stating that its response "shall serve as the

22  Administrator's timely notice of its denial of your claim for Benefits under the Plan").  As

23  to Plaintiff's miscalculation claim, IEDA explained that, according to the Plan

24  Administrator's records, Plaintiff began working in the industry in July 1973 at the age of

25  18.  Id.  Under the Plan document in effect in 1973, Plaintiff was not eligible to participate

26

27  _____

[1] Except as noted, the following summary is taken, where possible, from the Third Amended Complaint ("TAC").  Because the pleadings are difficult to decipher and largely unintelligible, the Court also refers to certain of the documents submitted by Defendants for

28  purposes of background and context.

1 in the Plan until he attained age 30.  Id. at 2.  In June 1976, the Plan's eligibility provisions

2 were amended such that Plaintiff could begin participating beginning at age 25, which he

3 attained on October 3, 1979.  Id.  Plaintiff received "past service credit" for his service

4 between October 3, 1975 (when he attained age 21) and October 3, 1979 (when he attained

5 age 25).  Id. at 3.  Plaintiff's employment with a "subscribing employer" ended in 1990, but

6 he remained an "active participant" until July 1, 1993.  Id.  As a result, Plaintiff received 14

7 years of "credited service" between October 1975 and July 1990.  Id.  However, under the

8 Plan, Plaintiff needed at least 15 years of credited service to qualify for early retirement

9 benefits.  Id.  IEDA advised Plaintiff that he could reapply for benefits shortly before he

10 attains age 65 (with benefits payable beginning on December 1, 2019).  Id.

11      The second aspect of Plaintiff's claim was that IEDA failed to provide him with 180

12 days prior notice of any changes to his benefits.  For the 2010 Plan Year, the Plan was in

13 "critical" status, meaning that it was facing funding deficiencies.  Id. at 3.  As a result, the

14 Plan was required to implement a "rehabilitation plan," pursuant to the Pension Protection

15 Act of 2006 ("PPA"), 29 U.S.C. § 1085.  Following an agreement between IEDA and the

16 Union, the Plan implemented its Rehabilitation Plan.  Id.  The Rehabilitation Plan included

17 the elimination of the early retirement subsidy for all participants and beneficiaries whose

18 benefit commencement date occurred on or after October 1, 2010.  Id.  IEDA concluded

19 that under § 432(e)(8) of the PPA, it was required only to provide 30 days' notice of the

20 reduction in the subsidy, not 180 days as alleged by Plaintiff.  Id. at 5.  The letter notified

21 Plaintiff that he had 60 days to appeal the denial of his claim.  Id.

22      Plaintiff mailed a letter to IEDA, dated November 3, 2013, appealing the denial of

23 his claim for benefits.  Id. Ex. C.  By letter dated December 14, 2013, IEDA informed

24 Plaintiff that his appeal had been denied.  Like its prior letter to Plaintiff, IEDA provided a

25 detailed explanation addressing the issues raised by Plaintiff.  IEDA advised Plaintiff that

26 should he desire to pursue the matter further he could file a civil action under ERISA.  Id. at

27 4.

28

**1**

**B.** **PROCEDURAL SUMMARY**

**2**

**1.** **Pleading History**

**3**        On January 22, 2013, Plaintiff filed a thirty-two -page, unnumbered Complaint in

**4** this Court alleging six claims and multiple sub-claims for relief based on the denial of his

**5** claim for benefits and lack of sufficient notice regarding the change in his benefits.[2]  IEDA

**6** and the Plan (collectively "IEDA Defendants"), filed a motion to dismiss, arguing that

**7** Plaintiff's Complaint should be dismissed for failure to comport with Rule 8(a), or

**8** alternatively, that Plaintiff be required to file a more definite statement under Rule 12(e).

**9** Dkt. 23.  Dkt. 1, 23.  The Union joined in the motion.  Dkt. 28.  To comply with the Court's

**10** Standing Orders, the parties then met and conferred, at which time defense counsel

**11** explained to Plaintiff the defects in his initial Complaint.  Kang Decl. ¶ 2; Achermann

**12** Decl. ¶ 6.  On September 9, 2013, the parties filed a Stipulation and Proposed Order

**13** Voluntarily Dismissing Plaintiff's Complaint and Granting Plaintiff Leave to Amend.  Dkt.

**14** 31.  The stipulation specified that Plaintiff had agreed to voluntarily dismiss his Complaint

**15** without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), and would "file an

**16** Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(2), on or before September 30,

**17** 2013, that cures all of the defects set forth in the Motion to Dismiss (Dkt. 23) and otherwise

**18** complies with the requirements of Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10."  Id.  The Court

**19** approved the stipulation.  Dkt. 33.[3]

**20**        On September 30, 2013, Plaintiff filed a longer, thirty-seven page First Amended

**21** Complaint ("FAC").  Dkt. 34.  Shortly thereafter, the parties met and conferred to discuss

**22**

**23**        [2] Plaintiff also filed an application to proceed in forma pauperis ("IFP").  Magistrate
Judge Westmore, who was presiding over the case, issued a pro forma order granting
**24** Plaintiff's IFP application without addressing the sufficiency of the Complaint as
contemplated by 28 U.S.C. § 1915(e). Dkt. 3, 8.  IEDA and the Plan declined to consent to
**25** the jurisdiction of a magistrate judge which resulted in the reassignment of this action.  Dkt.
20, 22.
**26**
        [3] As will be discussed in more detail below, Rule 8(a) requires that a complaint
**27** contain "a short and plain statement of the claim showing that the pleader is entitled to
relief," while Rule 10(b) requires that each paragraph of a complaint be separately
**28** numbered.

1  the FAC, which Defendants believed had failed to rectify any of the deficiencies in the

2  prior pleading.  Kang Decl. ¶ 4.  On October 18, 2013, the parties filed a second stipulation,

3  pursuant to which Plaintiff again agreed to voluntarily dismiss the FAC and to file a Second

4  Amended Complaint ("SAC") "that cures all of the defects set forth in the Motion to

5  Dismiss (Dkt. No. 23) and otherwise complies with the requirements of Fed. R. Civ. P. 8

6  and Fed. R. Civ. P. 10."  Dkt. 35.  The Court approved the parties' stipulation on October

7  18, 2013.  Dkt. 37.

8          Plaintiff filed a thirty-seven page SAC on November 12, 2013.  Dkt. 38.  Defense

9  counsel met and conferred with Plaintiff to explain why the SAC still failed to comply with

10  Rules 8 and 10.  Kang Decl. ¶ 5; Achermann Decl. ¶ 7.  Those discussions led to the filing

11  of a third stipulation on November 26, 2013, which, as before, specified that Plaintiff had

12  agreed to voluntarily dismiss the SAC, and file a Third Amended Complaint ("TAC") on or

13  before December 20, 2013, "that cures all of the defects discussed in the November 21,

14  2013 meet and confer and as set forth in the Motion to Dismiss (Dkt. No. 23) and otherwise

15  complies with the requirements of Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10."  Dkt. 39.  The

16  Court approved the third stipulation on November 26, 2014.  Dkt. 40.

17          On December 20, 2013, Plaintiff filed a thirty-seven page TAC, which is the

18  operative pleading before the Court.  The TAC contains the same previously-alleged

19  claims, albeit styled as follows:  (1) Unlawful Denial of Pension Benefits Due; (2) Denial

20  and Reduction of Pension Benefits Without Prior Notice; (3) Unlawful Reduction Cutback

21  in Pension Benefits; (4) Unlawful Transaction - Transferring Pension Benefit Payments to

22  ILWU and to Fiduciary IEDA; (5) Breach of Fiduciary Duty in Denial of Retirement

23  Benefits Owed; (6) Later Dates of Pension Plans Accrual for Younger Employees is Unfair

24  Classification; and (7) Civil and Criminal Conspiracy.  Like the prior pleadings, most of

25  these claims include several sub-claims.  None of the allegations appeared in numbered

26  paragraphs.  With the exception of minor modifications, the TAC is for all intents and

27  purposes unchanged from the prior pleadings.  Dkt. 41.

28

**2.      Pending Motions**

Two motions to dismiss are now before the Court.  First, IEDA Defendants, joined by the Union, contend that the TAC should be dismissed on the ground that fails to comport with the pleading requirements of Rule 8.  Dkt. 45, 52.  Alternatively, they request an order compelling Plaintiff to file a more definite statement under Rule 12(e).  Id.  Second, the Union separately moves to dismiss the TAC for failure to state a claim under Rule 12(b)(6).  Dkt. 50.  Plaintiff filed untimely oppositions to both motions.  Dkt. 56, 58.  His 19-page opposition to IEDA Defendants' motion also exceeds the maximum 15-page limit specified in the Court's Standing Orders.  Dkt. 56, 27.  The Union filed its reply on February 12, 2014, and IEDA Defendants' filed their reply on February 14, 2014.  Dkt. 60, 61.[4]

After Defendants filed their respective reply briefs, Plaintiff filed a document entitled Answer to IEDA Reply, consisting of a memorandum and forty pages of exhibits.  Dkt. 64.  IEDA filed an objection and request to have Plaintiff's unauthorized Answer to IEDA Reply stricken.  Dkt. 65.[5]  Apparently in response to his failure to seek and obtain leave of Court prior to submitting his Answer to IEDA Reply, Plaintiff filed a motion styled as Ask Court to File Answer, which seeks leave to file the Answer to IEDA Reply.  Dkt. 66.  In turn, IEDA Defendants have filed an opposition to Plaintiff's motion.  Dkt. 67.

## II.      DISCUSSION

### A.      PRELIMINARY MATTERS

Before addressing the merits of the instant motions to dismiss, the Court addresses two preliminary matters.  First, IEDA Defendants request that the Court strike Plaintiff's

---

[4] In their reply, IEDA Defendants request that the Court strike Plaintiff's untimely opposition and grant their motion to dismiss.  Dkt. 61.  While this request is well taken, striking the offending brief is unnecessary. Much like each of the four renditions of his complaint, Plaintiff's opposition is exceedingly difficult to decipher due to its unintelligible arguments, conclusory statements, nonsensical ramblings and lack of organization. Although the Court will consider Plaintiff's opposition on the merits, none of the arguments therein persuades the Court that the TAC complies with Rule 8.

[5] The exhibits consist of unauthenticated copies of what are purported to be copies of (1) a Summary of Rehabilitation Plan Benefit Adjustments and Employer Contribution Rate Increases, and (2) Plaintiff's letters to IEDA objecting to the timing of the aforementioned notice and the denial of his request for pension benefits. Dkt. 64.

1    Answer to IDEA Reply on the grounds that it is unauthorized and improper.  The Court's

2    Local Rules governing motion practice provide that after a reply is filed, "no additional

3    memoranda, papers or letters may be filed without prior Court approval" except for (1) an

4    "Objection to Reply Evidence, which may not exceed 5 pages of text, stating its objections

5    to the new evidence, which may not include further argument on the motion" and (2) "a

6    Statement of Recent Decision, containing a citation to and providing a copy of the new

7    opinion–without argument."  Civ. L.R. 7-3(d).

8            Plaintiff's IDEA Reply consists of four pages of additional argument and several

9    exhibits.  Dkt. 64.  Not only does Plaintiff's unauthorized filing fall outside both of the two

10   exceptions to the prohibition on post-reply submissions, it includes additional argument in

11   direct contravention to L.R. 7-3(d).  Even if the Court were to consider the substance of the

12   Answer to IDEA Reply and the attached exhibits, the outcome of the instant motions would

13   remain the same.  The memorandum essentially repeats the arguments presented in

14   Plaintiff's untimely opposition brief.  As for the exhibits, they have no bearing on whether

15   the TAC comports with Rule 8, which is the salient issue before the Court.  Accordingly,

16   the Court grants IEDA Defendants' request to strike the Answer to IEDA Reply.  See Smith

17   v. Frank, 923 F.2d 139, 142 (9th Cir. 1991) ("For violations of the local rules, sanctions

18   may be imposed including, in appropriate cases, striking the offending pleading."); Wood

19   v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1519 (9th Cir. 1983) (district

20   court did not abuse its discretion in striking untimely affidavits in opposition to summary

21   judgment motion where party failed to request extension of time or show excusable

22   neglect).

23           The second preliminary matter concerns Plaintiff's motion, styled as "Ask Court to

24   File Answer," in which he seeks leave to file the aforementioned Answer to IEDA Reply.

25   Dkt. 66.  Plaintiff now claims that he intended to file the aforementioned exhibits with his

26   opposition to IEDA's motion to dismiss, but neglected to do so because he is a pro se

27   litigant without a "Law Office Staff" and was "in a hurry."  Id. at 1.  However, Plaintiff's

28   motion lacks a declaration to substantiate his excuse.  See Civ. L.R. 7-5(a) ("Factual

1  contentions made in support of or in opposition to any motion must be supported by an

2  affidavit or declaration and by appropriate references to the record."). The failure to

3  comply the Local Rules, standing alone, justifies the denial of his motion. Tri-Valley

4  CARES v. U.S. Dept. of Energy, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion

5  as the result of a failure to comply with local rules is well within a district court's

6  discretion."). That aside, as discussed above, the exhibits have no bearing on any of the

7  issues presented in the pending motions to dismiss. Leave to file the Answer to IEDA

8  Reply is therefore denied. The Court now turns to the merits of Defendants' motions.

9          B.      IEDA DEFENDANTS' MOTION TO DISMISS

10                 1.      Analysis

11         Pleadings in federal court actions are governed by Federal Rule of Civil Procedure

12  8, which requires only "a short and plain statement of the claim showing that the pleader is

13  entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and

14  direct." Id. 8(d); see also id. 10(b) ("A party must state its claims or defenses in numbered

15  paragraphs, each limited as far as practicable to a single set of circumstances."). The

16  purpose these requirements is to ensure that the defendant has "fair notice of what the . . .

17  claim is and the grounds upon which it rests[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544,

18  555 (2007). "Rule 8(a) has 'been held to be violated by a pleading that was needlessly

19  long, or a complaint that was highly repetitious, or confused, or consisted of

20  incomprehensible rambling.'" Calfasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637

21  F.3d 1047, 1059 (9th Cir. 2011)) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal

22  Practice & Procedure § 1217 (3d ed. 2010)).

23         "Something labeled a complaint but written . . . , prolix in evidentiary detail, yet

24  without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs,

25  fails to perform the essential functions of a complaint." McHenry v. Renne, 84 F.3d 1172,

26  1179 (9th Cir. 1996). As such, a pleading that is "argumentative, prolix, replete with

27  redundancy and largely irrelevant" may be dismissed. McHenry, 84 F.3d at 1177-78; e.g;

28  Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (holding that a

1 complaint that is so confusing that its "'true substance, if any, is well disguised'" may be

2 dismissed for failure to satisfy Rule 8); <u>Nevijel v. North Coast Life Ins. Co.</u>, 651 F.2d 671,

3 673-74 (9th Cir. 1981) (affirming dismissal of a 48-page complaint that was "'verbose,

4 confusing and almost entirely conclusory'"); <u>but see</u> <u>Hearns v. San Bernardino Police</u>

5 <u>Dept.</u>, 530 F.3d 1124, 1131-32 (9th Cir. 2008) ("verbosity or length is not by itself a basis

6 for dismissing a complaint based on Rule 8(a)").[6]

7        In the instant case, the Court finds that the TAC is precisely the type of prolix,

8 argumentative, unintelligible and redundant pleading which the Ninth Circuit has held is

9 subject to dismissal under Rule 8.  Far from presenting "a short and plain statement of the

10 claim" and allegations that are "simple, concise, and direct," the pleadings consists of

11 exceedingly lengthy and seemingly incoherent discussions regarding matters that are

12 impertinent to his core claim for the denial of benefits.  Although the basic facts of this case

13 appear to be relatively uncomplicated, Plaintiff unnecessarily allocates the first seven pages

14 of the TAC ostensibly to discuss the background facts.  While some relevant facts are

15 alleged, they are mired in a morass of confusing prose and non-sequiturs, as exemplified by

16 the following:

17            The major issue of concern here is, I cannot go back in time to
            re-earn those lost Pension Benefits.  They are either earned or
18            lost forever.  I do not have the ability to return back in time to
            make changes in that outcome.  ***Time marches on and stops for***
19            ***no one.***  We must there [sic] never waste any time that we have
            to live for we can never go back to change that time.  Time is
20            the most precious commodity that we have for we only have so
            much time that we have for we only have so much time in our
21            lives.  So we must take care of advantage of every moment of
            that precious allotment of time that we have.  I cannot endure
22            the loss of almost 7 years of Pension benefit accrual Credits.
            Thus, that [sic] almost (7) years of loss (Suspension) of Pension
23            benefit benefits accrual crediting is such an overwhelming and
            insurmountable loss.  That loss cannot be measured in any
24            amount of money.  That because money can never replace the
            time that was lost.  So I must be a very good steward with the
25            time that our GOD has allotted me, for I will be held
            accountable for that time usage for either good or bad. . . .  I

26

27        ⁶ Though "Rule 8(a) and Rule 12(b)(6) can overlap," <u>Knapp v. Hogan</u>, 738 F.3d
   1106, 1109 (9th Cir. 2013), Rule 8 "is a basis for dismissal independent of Rule 12(b)(6),"
28 <u>McHenry</u>, 84 F.3d at 1179.

1
2
3
4

> will have to make my stand upon the Rock and fight the good fight in Christ Jesus here.  I will not rest until I have won the good fight of faith with Christ Jesus my Lord.  Pension benefits that are accrued and credited to me, is my Vested Property Right.  Just as it is with my Right to work and earn a livelihood is.   My time of my life is my own and it is my Inalienable Property Right under Common Law.

5  TAC at 6.[7]

6   The section of the TAC setting forth Plaintiff's ERISA claims begins on page seven.

7  As noted, Plaintiff appears to be alleging that the Plan erroneously determined that he is not

8  presently eligible for the payment of pension benefits.  Under ERISA, a plan participant or

9  beneficiary may bring a claim "to recover benefits due to him under the terms of the plan,

10  to enforce his rights as a beneficiary under the terms of the plan, or to clarify his rights to

11  future benefits under the terms of the plan."  28 U.S.C. § 1132(a)(1)(B).  To prevail on such

12  a claim, the plaintiff bears the burden of demonstrating that the plan administrator erred in

13  denying benefits.  Muniz v. Amec Constr. Mgmt., 623 F.3d 1290, 1294 (9th Cir. 2010). A

14  denial of benefits claim under § 1132(a)(1)(B) "is to be reviewed under a de novo standard

15  unless the benefit plan gives the administrator or fiduciary discretionary authority to

16  determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire &

17  Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "The civil enforcement provisions of

18  ERISA, codified in § 1132(a), are 'the exclusive vehicle for actions by ERISA-plan

19  participants and beneficiaries asserting improper processing of a claim for benefits.'"

20  Gabriel v. Alaska Elec. Pension Fund, -- F.3d --, 2014 WL 2535469, *4 (9th Cir. June 6,

21  2014) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987)).

22   Despite the seemingly discrete nature of an ERISA claim for denial of pension

23  benefits, Plaintiff alleges seven claims for relief—five of which contain a collective

24  fourteen sub-claims, which appear to be separate legal claims.  TAC at 7-35.  These claims

25  and sub-claims are largely duplicative, and are expressed in a wordy, convoluted and

26

27

28

---

[7] These allegations appear verbatim in Plaintiff's FAC and SAC.  FAC at 6; SAC at 6.

unintelligible manner.  The following allegation set forth in Claim 4, subpart 4, typifies

Plaintiff's prolix allegations:

> I was given No explanation or notices that explained the denial of vested Pension benefits without Due Process of Law.  That means Notice that explains all and affords the Adequate Notice and opportunity to defend.  Vested Right to Pension benefits becomes my Common Law Property Right which is an inalienable Right.  I thus have the Common Law Right and Statutory Right to protect my vested property Right, from unlawful deprivation and theft from Administrative interests charged with protecting my vested property Right.  It would thus become an unlawful Denial of my Right to Vested Property Interest Right of Pension Benefits.  It is Vested Property Right of Pension Benefits.  It is a Vested Property Right that becomes my Inalienable Common Law Right to Protect by Heightened due Process Protection and ERISA Statutory Protection.  To which I Exercise my Sovereign Right to Protect my Vested Property Interest Right to Pension Benefits I am Owed and Entitled to.  It is my Natural God-given, Inalienable Common Law Right to Protect my Property Rights and Vested Interest Property Rights by Heightened Due Process Protection.  That includes the Right to Exclude others from Interfering with My Right to Possession thereof. . . . Property and Vested Interest in Property Interest Right protected under the Common law.  Thus I have Several Different Federal and Common Law Protection under Heightened Due Process of Law and ERISA Statutory Protection. . . .

TAC at 11-12 (internal citations omitted).  The other claims are alleged in a similar manner

regarding a multitude of issues that are neither factual nor bear any relation to his claim for

denial of pension benefits.

Many of the allegations throughout the TAC also are repetitive.  Entire paragraphs

and subsections of the TAC are repeated substantially verbatim multiple times throughout

the pleading.  For example, in Claim 4, subsection (a), entitled "6 Plus Years of Paid

Pension Trust Benefits Suspended Without my Permission" is repeated in large part in a

second Claim 4, subsection (1)(a), entitled "6-Years of Paid Pension Trust Benefits

Suspended Without my Personal Permission."  TAC at 20:22-21:16; TAC at 25:17-26:7.

Also, Claim 4, subsection (5), entitled "Unlawful Denying of Benefit Accrual and Crediting

because of Age Classification" is repeated nearly verbatim in Claim 5, subsection (2)(a).

TAC at 21:17-25:5; TAC at 27:24-28:10.  Elsewhere in the TAC, Plaintiff repeats, at least

1  twelve times, the allegation that, "The facts is, the IEDA, readily Admits that those (6) Plus

2  Years of Pension Payments made for me to the Pension Trust where Not Credited as

3  Accrued to my Pension Trust Account." See, e.g., TAC at 5:10-11; TAC at 18:2-3; TAC at

4  19:6-7; TAC at 19:22-23; TAC at 20:14-15; TAC at 20:23-24; TAC at 22:13-14; TAC at

5  25:18-19; TAC at 26:8-9; TAC at 29:10-12; TAC at 31:16-17; TAC at 34:11-12.[8]

6      None of the arguments presented in Plaintiff's opposition—which is as wordy,

7  verbose and confusing as the TAC—persuades the Court that the TAC comports with Rule

8  8.  For the most part, Plaintiff presents a litany of arguments ostensibly directed at the

9  merits of his claims.  Opp'n at 4-10.  As explained in McHenry, however, "[t]he propriety

10  of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is

11  wholly without merit. . . .  Rule 8(e), requiring each averment of a pleading to be 'simple,

12  concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal

13  independent of Rule 12(b)(6)."  Id. at 1179 (citation omitted).  As such, whether or not

14  Plaintiff has any viable claims against Defendants is inapposite for purposes of determining

15  whether the TAC comports with the requirements of Rule 8.

16      Equally unavailing is Plaintiff's contention that any failure to comply with Rule 8(a)

17  should be excused on the ground that he is not an attorney.  Opp'n at 11.[9]  As an initial

18  matter, although he is not an attorney, Plaintiff is not as inexperienced as he purports to be.

19  The Court's review of ECF reveals that Plaintiff has filed twenty-three pro se lawsuits in

20  the Northern District of California, and twelve actions in the Eastern District of California.

21  See Whitsitt v. City of Tracy, No. 2:10-cv-0528 JAM AC PS, 2014 WL 2091363, *5 (E.D.

22

23  [8] While a number of the paragraphs are similar to one another,they are not always
completely identical.  Consequently, Defendants must expend additional time and effort
parsing through each such ostensibly repetitive paragraph to ascertain precisely what

24  Plaintiff is alleging.

25  [9] Like the TAC, Plaintiff's opposition purports to make this point repeatedly.  See
Opp'n at 1:28 to 2:1 ("I am Not expected nor the Law expect me to meet Professional

26  Standards of Pleading"); id. 2:5-8 at ("I have the Right not to get caught up in Procedural
related Arguments of Professional Conduct and Standards, that do not apply to Pro Se

27  Litigants"); id. at 11:15-16 ("I am a Pro Se Litigant and I am not held to professional
standards."); id. at 12:23-24 ("I am Not Held to a Heightened Pleading Standard and rigged

28  professional standards to meet in drafting my Complaint").

1  Cal. May 19, 2014).  In many of those cases, "plaintiff has been reprimanded multiple

2  times for his failure to comply with court rules."  Id. (citing cases); Whitsitt v.

3  Amazon.com, No. 2:14-cv-416 TLN CKD PS, 2014 WL 897044, *1-2 (E.D. Cal. Mar. 6,

4  2014) (noting that:  "Plaintiff's complaint is 44 pages long, contains multiple sections with

5  small print and single spacing, and also contains a large amount of material irrelevant to

6  plaintiff's claims.  Furthermore, several passages are repeated virtually verbatim throughout

7  the complaint.").

8      The above notwithstanding, pro se status is not an excuse for failing to comply with

9  the rules and orders of this Court.  Although courts are to liberally construe pro se

10  pleadings, pro se litigants remain "bound by the rules of procedure."  Ghazali v. Moran, 46

11  F.3d 52, 54 (9th Cir. 1995); see Brazil v. United States Dept. of Navy, 66 F.3d 193, 199

12  (9th Cir. 1995) ("Although a pro se litigant . . . may be entitled to great leeway when the

13  court construes his [or her] pleadings, those pleadings nonetheless must meet some

14  minimum threshold in providing a defendant with notice of what it is that it allegedly did

15  wrong.").  Self-representation is not an excuse for non-compliance with court rules.  See

16  Swimmer v. I.R.S., 811 F.2d 1343, 1344 (9th Cir. 1987) ("[i]gnorance of court rules does

17  not constitute excusable neglect, even if the litigant appears pro se.") (citation omitted).

18  The policy requiring courts to liberally construe pro se complaints "does not mandate that a

19  court sustain every pro se complaint even if it is incoherent, rambling, and unreadable."

20  Johnson v. Wennes, No. 08cv1798-L9JMA, 2008 WL 4960460, *3 (S.D. Cal. Nov. 17,

21  2008).

22      Finally, Plaintiff attempts to dismiss IEDA Defendants' motion as nothing more than

23  "nik picking" and "Professional griping about [him] not living up to their Professional

24  Standards."  Opp'n at 14.  Not so.  Plaintiff is required to present his claims with sufficient

25  clarity to provide each defendant fair opportunity to frame a responsive pleading.  See

26  McHenry, 84 F.3d at 1176.  Again, McHenry is germane:

27          Prolix, confusing complaints such as the ones plaintiffs filed in
           this case impose unfair burdens on litigants and judges. As a
28          practical matter, the judge and opposing counsel, in order to
           perform their responsibilities, cannot use a complaint such as

**1**
the one plaintiffs filed, and must prepare outlines to determine
who is being sued for what.

**2**

**3** Id. at 1179.  Under Rule 8(b), a defendant responding to a pleading must: (1) state in short

**4** and plain terms its defenses to each claim asserted against it; and (2) admit or deny the

**5** allegations asserted against it by an opposing party.  See Fed. R. Civ. P. 8(b)(1).  "A denial

**6** must fairly respond to the substance of the allegation."  Id. 8(b)(2).  Here, IEDA

**7** Defendants' ability to formulate a responsive pleading consistent with Rule 8(b) is

**8** particularly challenging given the discursive, often unintelligible and repetitive manner in

**9** which the allegations, the vast majority of which are not factual, are presented.  The Court

**10** therefore concludes that Plaintiff's TAC violates Rule 8 and is subject to dismissal.  See

**11** McHenry, 84 F.3d at 1179; Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992) (listing

**12** factors to consider in a Rule 41(b) dismissal).

**13**                                **2.      Leave to Amend**

**14**        As a general rule, leave to amend should be granted if it appears possible that the

**15** defects in the complaint could be corrected, particularly where the plaintiff is pro se.  Lopez

**16** v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  Leave to amend need not be

**17** granted, even to a pro se litigant, however, where further amendment would be futile.

**18** McQuillon v. Schwarzenegger, 369 F.3d 1091, 1099 (9th Cir. 2004).  In addition, leave to

**19** amend may properly be denied based on a plaintiff's "repeated failure to cure deficiencies

**20** by amendments previously allowed."  Foman v. Davis, 371 U.S. 178, 182 (1962); Zucco

**21** Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (affirming dismissal

**22** with prejudice after repeated failures to cure deficiencies).  "The district court's discretion

**23** to deny leave to amend is particularly broad where plaintiff has previously amended the

**24** complaint."  In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1097-98 (9th Cir. 2002)

**25** (internal quotations and citation omitted); see also Telesaurus VPC, LLC v. Power, 623

**26** F.3d 998, 1003 (9th Cir. 2010) (district court may deny a plaintiff leave to amend if the

**27** plaintiff had several opportunities to amend its complaint and repeatedly failed to cure

**28** deficiencies).

1       Plaintiff contends that he is entitled to leave to amend on the ground that he

2  volunteered to amend his pleadings, and that the Court never made any finding regarding

3  the adequacy of his complaints.  Opp'n at 18.  More specifically, Plaintiff asserts that "[he]

4  was Not [sic] Court Ordered to amend my complaint according to the judges [sic]

5  specifications," and instead "voluntarily in good faith agreed to Amend [sic] my Complaint

6  each time."  Opp'n at 11-12.  This claim is belied by the record.  Each of the three

7  stipulations executed by the Court contains the following order:  "Pursuant to the foregoing

8  Stipulation, and good cause appearing, the Court hereby orders that Plaintiff's [operative]

9  Complaint is dismissed, without prejudice.  Plaintiff shall file an Amended Complaint . . .

10  that cures the defects of the [earlier amended complaint] . . . and that otherwise satisfies the

11  requirements of Fed. R. Civ. P. 8 and Fed. R. Civ. P. 10."  Dkt. 33, 37, 40.  In other words,

12  upon its approval of the parties' stipulations, each stipulation became a court order.

13       A review of the four complaints filed by Plaintiff in this action reveals that he has

14  made little, if any, effort to comply with the Court's order to comply with Rule 8.  The

15  TAC is virtually identical the SAC, which, in turn, is essentially identical to the original

16  Complaint and the FAC.  Instead of editing his complaint, Plaintiff has expanded it.

17  Despite three prior opportunities to amend, Plaintiff has made no progress towards

18  providing an organized pleading containing a short and plain statement of his claim that is

19  devoid of extraneous, repetitive and irrelevant verbage.  Each of the four complaints lacks

20  any paragraph numbering, even though Plaintiff was specifically ordered three times to

21  comply with Rule 10.  Given Plaintiff's failure to file a pleading consistent with Rule,

22  despite multiple prior opportunities to do so, the Court has little confidence that permitting

23  Plaintiff a *fourth* opportunity to amend will result in an acceptable pleading.

24       The above notwithstanding, the Court is mindful of its obligation to consider less

25  drastic alternatives to dismissal.  See Ferdick, 963 F.2d at 1261.  Although the Court has

26  previously approved several stipulations directing Plaintiff to amend his complaints in a

27  manner consistent with Rule 8, the Court will permit Plaintiff one final opportunity to

28  amend his pleadings.  The amended complaint *must* clearly and succinctly state only those

1  facts that, if accepted as true, are sufficient "'state a claim to relief that is plausible on its

2  face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570

3  (2007)).  Plaintiff shall not repeat allegations where unnecessary.  Extraneous commentary

4  regarding irrelevant matters—such as those identified above—shall be omitted.  Each

5  paragraph of the Complaint must be separately numbered.  Each claim shall be distinctly

6  labeled, and the use of sub-claims should be avoided.  Plaintiff is warned that if he files a

7  Fourth Amended Complaint that is found to be in violation of Rule 8, any other applicable

8  rule of procedure, or this order, he will be subject to monetary or other sanctions under

9  Federal Rule of Civil Procedure 11.

10      C.      THE UNION'S MOTION TO DISMISS

11          In addition to joining in IEDA Defendants' motion for dismissal under Rule 8 or for

12  a more definite statement under Rule 12(e), the Union seeks dismissal for failure to state a

13  claim under Rule 12(b)(6).  Unlike a Rule 8 motion, a Rule 12(b)(6) motion "tests the legal

14  sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint

15  may be dismissed under Rule 12(b)(6) for failure to state a cognizable legal theory or

16  insufficient facts to support a cognizable legal theory.  Mendiondo v. Centinela Hosp. Med.

17  Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  In adjudicating a Rule 12(b)(6) motion, the

18  Court accepts all factual allegations in the complaint as true and construes them in the light

19  most favorable to the nonmoving party.  Narayanan v. British Airways, 747 F.3d 1125,

20  1127 (9th Cir. 2014).

21          The Union contends that it is not a proper party because it was uninvolved in the

22  payment of benefits under the Plan.[10]  Plaintiff avers that the Union, as a "party in interest,"

23  along with IEDA, is legally responsible for the allegedly untimely notification of the

24  benefits change.  TAC at 9.  He also posits that the Union benefitted financially from the

25

26      [10] "Section 302(c)(5) of the LMRA, 61 Stat. 157, permits employers and unions to
    create employer-financed trust funds for the benefit of employees so long as employees and
27  employers are equally represented by the trustees of the funds."  N.L.R.B. v. Amax Coal
    Co., a Div. of Amax, Inc., 453 U.S. 322, 325 (1981).

28

- 16 -

1   non-payment of his benefits.  E.g., id. at 13 ("The Fiduciary transferred Pension funds that

2   are credited to me to the [Union] the party of interest."); id. at 24 ("The Party of Interest

3   being the [the Union]  has Benefitted by making $400,000.00 from me alone and someone

4   has Pocketed that money").  Beyond these conclusory allegations, however, no facts are

5   alleged to support Plaintiff's claim that the Union misappropriated pension funds.

6   Plaintiff's opposition likewise fails to identify any facts to support his claims against the

7   Union, and merely poses the rhetorical question: "Where did the money from age 18 to my

8   25th birthday go?"  Opp'n at 6.  The Court thus finds that Plaintiff has failed to state any

9   plausible claims for relief against the Union.  Plaintiff is granted leave to amend to cure

10  such deficiency.

11  **III.    CONCLUSION**

12       The Court concludes that the TAC should be dismissed based on Plaintiff's failure to

13  comply with the Court's prior orders to submit a pleading that comports with Rule 8 and

14  Rule 10.  Alternatively, as to the Union, the TAC is subject to dismissal for failure to state a

15  claim.  Accordingly,

16       IT IS HEREBY ORDERED THAT:

17       1.    Plaintiff's Ask Court to File Answer, which is construed as a motion for leave

18  to file the previously-filed Answer to Answer to IEDA Reply, is DENIED.  The Answer to

19  IEDA Reply (Dkt. 65) shall be STRICKEN from the record.

20       2.    Defendants' respective motions to dismiss are GRANTED.  Defendants'

21  alternative motion for a more definite statement is DENIED as moot.

22       3.    The TAC is DISMSSED with leave to amend.  Plaintiff shall have twenty-

23  one (21) days from the date this Order is filed to file a Fourth Amended Complaint,

24  consistent with the Court's rulings.  Plaintiff is advised that any factual allegations set forth

25  in his amended complaint must be made in good faith and consistent with Rule 11.  The

26  failure to timely file the Fourth Amended Complaint and/or the failure to comply with this

27  Order will result in the dismissal of the action with prejudice.

28       4.    This Order terminates Docket 45, 50 and 66.

1      IT IS SO ORDERED.

2  Dated:  July 22, 2014

3                                                    _____
                                                    SAUNDRA BROWN ARMSTRONG
4                                                    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28